IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

|  |  |  |
|---|---|---|
| HOMEBANK OF ARKANSAS AND JOHN STACKS, INDIVIDUALLY AND IN HIS CAPACITY AS AN OFFICER AND DIRECTOR OF HOMEBANK OF ARKANSAS, | * * * * * * | |
| Plaintiffs, | * * | |
| vs. | * * * * | No. 4:06cv001670 SWW |
| THE KANSAS BANKERS SURETY COMPANY, | * * * | |
| Defendant. | * | |

<u>MEMORANDUM AND ORDER</u>

HomeBank of Arkansas ("HomeBank") and John Stacks ("Stacks"), individually and in his capacity as Officer and Director of HomeBank, bring this action against Kansas Bankers Surety Company ("KBS") seeking a judicial declaration that KBS has a duty to defend and indemnify HomeBank and Stacks in connection with a counterclaim and third-party complaint filed by Tom Mix and his wife, Shawn (the "Mixes"), in an underlying foreclosure action. This action was originally filed in the Circuit Court of Faulkner County, Arkansas, but was removed to this Court by KBS on December 13, 2006. The matter is now before the Court on motion of Stacks for partial summary judgment [doc.#30]. KBS has responded in opposition to Stacks's motion and Stacks has filed a reply to KBS's response. Having considered the matter, the Court grants Stacks's motion for partial summary judgment.[1]

---

[1] This action originally was assigned to Judge Bill Wilson but was reassigned to this Court on April 25, 2008, following Judge Wilson's recusal.

I.

Homebank is an Arkansas bank with its principal offices in Faulkner County, Arkansas.

Stacks is a resident of Faulkner County and is President and a Director of HomeBank.  KBS is a

foreign insurance corporation which conducts business with numerous banks in Arkansas.

On July 1, 2005, HomeBank and KBS entered into a Directors, Officers, and Employees

Indemnity and Bank Lender Liability Policy No. DL 6664 AR ("Policy").  The Policy

indemnified

> each and every person who was, now is or may hereafter be a Director or Officer
> or Employee of [HomeBank] for personal Loss which the Director or Officer or
> Employee is legally obligated to pay by reason of any Wrongful Act solely in
> their capacities of Director or Officer or Employee of [HomeBank] which is first
> Discovered during the Policy Period.

Policy, § I(A).

Relevant Policy definitions include:

> (d) "Wrongful Act" shall mean any actual or alleged: 1) error or misstatement; or
> 2) misleading statement; or 3) act or omission; or 4) breach of duty; or 5) breach
> of fiduciary duty; or 6) any other act by the Directors or Officers or Employees in
> the discharge of their duties, individually or collectively, which is claimed against
> them solely by reason of their being Directors or Officers or Employees of the
> Bank.

> (f) "Loss" under Section I Insuring Agreement (A) shall mean any amount which
> the Directors or Officers or Employees are legally obligated to pay or for which
> the Bank may be required or permitted by law to pay as indemnity to the
> Directors or Officers or Employees, for a claim or claims made against the
> Directors or Officers or Employees for Wrongful Acts and shall include but not
> be limited to damages, judgments, settlements and costs, cost of investigation
> (excluding salaries of Officers or Employees of the Bank) and defense of legal
> claims, claims or proceedings and appeals therefrom, cost of attachment or similar
> bonds, except as excluded from coverage under Section IV.

Policy, § III.

The Policy excludes from coverage claims "attributable to the Directors or Officers or

2

Employees gaining in fact any personal profit or advantage to which they were not legally

entitled;" claims for punitive damages; and claims "brought about or contributed to by the

dishonesty of the Directors or Officers or Employees."  Policy, § IV(2),(8), and (11).

On September 14, 2005, HomeBank filed a foreclosure action against the Mixes in the

Circuit Court of Faulkner County, Arkansas, styled *HomeBank of Arkansas v. Thomas Mix and

Shawn Mix, et al.*, Case No. 2005-775.  According to the complaint, on January 13, 2004, the

Mixes executed a promissory note in the amount of $86,500 in favor of HomeBank and secured

the note with a mortgage on a house owned by the Mixes.  HomeBank alleged that the Mixes

subsequently defaulted on the note.

On October 21, 2005, the Mixes filed a counterclaim against HomeBank and a third-party

complaint against Stacks and Dairy Senter, Inc. ("Dairy Senter"), a fuel operation company

owned by Stacks.  HomeBank subsequently filed an amended complaint for foreclosure on

March 27, 2006, and the Mixes thereafter reasserted their claims against HomeBank, Stacks, and

Dairy Senter in a separate counterclaim and third-party complaint.

In their counterclaim and third-party complaint, the Mixes allege that Stacks fraudulently

induced them into purchasing a convenience store personally owned by Stacks in Damascus,

Arkansas (the "Damascus One-Stop"), while improperly benefitting Stacks and Dairy Senter.

The Mixes claim that in December 2003, they spoke with Kim Rankin ("Rankin"), an employee

of HomeBank, concerning the possible purchase of a convenience store located in Rosebud,

Arkansas.  Approximately a week later, claim the mixes, Rankin contacted Mix indicating that

her boss, Stacks, personally owned a convenience store, the Damascus One-Stop, that was for

sale and would be a good investment, the opportunity of a lifetime.  The Mixes claim Rankin

further represented to Mix that she was privy to the books and records of the Damascus One-Stop, that it has regularly made a profit, and that HomeBank would finance the purchase of the store for Mix and his wife.

The Mixes claim that Stacks contacted them on numerous occasions soliciting their interest in the possible purchase of several stores owned by Stacks, including the Damascus One-Stop.  The Mixes' state they indicated to Stacks that they did not have the necessary capital to finance the inventory for the Damascus One-Stop, but that they did have a home which had some equity.  The Mixes state that Stacks and Terry Milam ("Milam"), a loan officer and Vice President of HomeBank, assessed the property and advised the Mixes they would finance 80% of the value of the house and the rest based on the inventory of gas and food.  In negotiating the sale of the Damascus One-Stop, claim the Mixes, Stacks ensured that the Mixes maintained a gas contract with Dairy Senter.

The Mixes claim that Stacks misrepresented the true financial condition of the Damascus One-Stop, both directly and through his agents, Rankin, Milam, and an employee of Stacks, Darrell Cook ("Cook"), and misrepresented the condition of the equipment.  The Mixes state that after the sale of the Damascus One Stop to the Mixes, Stacks failed to correct problems with flooding and sewage despite his personal promise to rectify those problems, and improperly unloaded, improperly charged, and failed to deliver fuel to the Mixes as a result of the Mixes' agreement with Dairy Senter.

The Mixes assert claims of fraud, constructive fraud, breach of fiduciary duty, breach of covenant of good faith and fair dealing, and negligence due to Stacks' role as majority owner of HomeBank and "as their banker," and also as former owner of the property which the Mixes had

4

purchased from Stacks and which secured the HomeBank loan at issue in the foreclosure action.

By letters dated May 17, 2006, and June 7, 2006, HomeBank and Stacks gave KBS written notice of their claim under the Policy and demanded coverage.  By letters dated May 23, 2006, and June 12, 2006, KBS denied coverage to HomeBank and Stacks on the grounds that the acts complained of were not committed by Stacks solely within his capacity as an officer of the bank.

II.

Stacks moves for partial summary judgment on grounds KBS has a duty to provide Stacks a defense to the Mixes' counterclaim and third-party complaint.  Stacks argues there are no genuine issues of material fact with respect to this issue and that it is entitled to partial summary judgment as a matter of law.

A.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed.R.Civ.P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio,*

475 U.S. 574, 586 (1986). The nonmoving party may not rest on mere allegations or denials of his pleading, but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (quoting Fed.R.Civ.P. 56(e) and adding emphasis). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* (citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### B.

In examining the duty to defend, the general rule is that the allegations in the pleadings against the insured determine the insurer's duty to defend. *Murphy Oil USA, Inc. v. Unigard Security Insurance Co.*, 347 Ark. 167, 175-76, 61 S.W.3d 807, 812 (2001) (citations omitted). Additionally, the duty to defend is broader than the duty to indemnify. *Id.* The duty to defend arises when there is a possibility that the injury or damage may fall within the policy coverage. *Id. See also Madden v. Cont'l Cas. Co.*, 53 Ark.App. 250, 254, 922 S.W.2d 731, 734 (1996) ("It is the allegations made against the insured, however, groundless, false, or fraudulent such allegations may be, that determine the duty of the insurer to defend the litigation against its insured."). Courts must resolve any doubt in favor of the insured in determining whether a complaint states a claim within the policy coverage. *Murphy Oil*, 347 Ark. at 178, 61 S.W.3d at

814; *Mattson v. St. Paul Title Co. of South*, 277 Ark. 290, 293, 641 S.W.2d 16, 18 (1982).

Courts are not, however, required by the rules of contractual construction to stretch their imaginations to create coverage where none exists. *Pate v. U.S. Fid. & Guar. Co.*, 14 Ark.App. 133, 136, 685 S.W.2d 530, 532 (1985).

1.

KBS argues that the Mixes' claims against Stacks do not contain any allegations against Stacks in his capacity as a director, officer, or employee of HomeBank.  Because the Policy does not provide coverage to HomeBank directors, officers, or employees for claims made against them because of their personal dealings, argues KBS, the Policy provides no coverage for claims made against Stacks arising from his sale of the Damascus One-Stop.[2]

Contrary to KBS's assertion, the Mixes' counterclaim and third-party complaint does contain allegations against Stacks that can be considered to be solely in his capacity as a director, officer, or employee of HomeBank.  Among other things, Paragraph 7 of the counterclaim and third-party complaint alleges the Mixes were informed Stacks was President of HomeBank; Paragraph 8 alleges the Mixes met Stacks at the HomeBank office in Damascus where they were told that HomeBank, with the assistance of Stacks, would provide financing (with Stacks allegedly representing he would have to keep the appearance that he was personally separated from the loan); Paragraph 9 alleges Rankin represented to the Mixes that no other bank would lend them money; Paragraph 13 alleges that Stacks and Milam assessed the Mixes' collateral property and advised them that they would finance 80% of the value of the house and the rest

---

[2] It is undisputed that Stacks is an officer covered under the Policy.

7

based on the inventory of the gas and food; Paragraph 15 alleges various loan documents were signed by Rankin with initials; Paragraph 16 alleges Stacks, though his agents Rankin, Milam and Cook, misrepresented the true financial condition of the Damascus One-Stop; Paragraph 19 alleges that the Mixes abandoned the Damascus One-Stop due to the material misrepresentations and false representations made to them by Stacks and Rankin and that Rankin ultimately received a raise and a promotion, among other things; Paragraphs 25-30 allege that due to the advice and control that Stacks had over the Mixes "as their banker, Stacks, either individually, or in connection with HomeBank and Dairy Senter, Inc., owed Tom and Shawn Mix a duty of full and complete disclosure, honesty in fact, and an obligation not to self deal to the detriment of Tom and Shawn Mix," and that Stacks, Rankin, and other representatives of Stacks, HomeBank, and Dairy Senter made false and misleading misrepresentations that amounted to constructive fraud; Paragraphs 32-33 allege that due to the advice and control that Stacks had over the Mixes "as their banker, Stacks, either individually, or in connection with HomeBank and Dairy Senter, Inc., owed Tom and Shawn Mix a duty of full and complete disclosure, honesty in fact, and an obligation not to self deal to the detriment of Tom and Shawn Mix," and that Stacks breached a fiduciary duty to the Mixes; Paragraphs 34-36 allege that HomeBank, Dairy Senter and Stacks, "as their banker," covenanted to act in good faith at all times and deal honestly, openly and fairly with the Mixes and that the conduct of HomeBank and Stacks was a direct breach of the covenant of good faith and fair dealing; and Paragraphs 37-38 allege that the relationship between HomeBank, Dairy Senter, Stacks, and the Mixes was such that HomeBank, Dairy Senter, and Stacks owed a duty of ordinary care to the Mixes.

Based on the allegations of the counterclaim and third-party complaint, and resolving all

doubt in favor of the insured, the Court finds that certain allegations are made against Stacks

solely in his capacity as President of HomeBank and the Mixes' banker and that this is not a case

in which Stacks is sued only as a shareholder of HomeBank.  *See McAninch v. Wintermute*, 491

F.3d 759, 770-771 (8th Cir. 2007) (distinguishing cases in which suit is brought in connection

with capacity as shareholder and not in connection with duties as director or officer).  It may

ultimately be determined that Stacks did not commit the acts alleged in the counterclaim and

third-party complaint in his capacity as an officer, director, or employee of HomeBank.  "The

test, however, is whether the mere possibility of coverage exists in this case," *Murphy Oil*, 347

Ark. at 178, 61 S.W.3d at 814, and the Court here finds that such a possibility exists and that

KBS thus has a duty to provide Stacks a defense against the Mixes' claims.[3]

2.

KBS additionally argues Stacks failed to provide the required notice of the Mixes'

claims, thereby negating any coverage under the Policy.  Concerning notice, the Policy provides:

> [HomeBank] or Directors or Officers or Employees shall, as a condition
> precedent to rights under this policy, give to the Underwriter notice in writing as
> soon as practicable, not to exceed 30 days after Discovery of any claim made and
> shall give the Underwriter such information and cooperation as it may reasonably
> require.  FAILURE TO GIVE SUCH NOTICE, REGARDLESS OF ANY
> SHOWING OF PREJUDICE TO THE UNDERWRITER, SHALL VOID THIS
> POLICY AND ALL OBLIGATIONS OF THE UNDERWRITER FOR THAT
> CLAIM.

Policy, § VII(b) (emphasis in original).

---

[3] The fact that there may be uncovered claims does not obviate KBS's duties under the Policy with respect to covered claims.  *McAninch*, 491 F.3d at 771.  Similarly, the fact that Stacks may have been acting in a dual capacity does not necessarily preclude coverage.  *Id*. at 771-72.

9

The Policy is a claims made and reported policy that applies only to those claims that are both first made against the insured and reported in writing to KBS during the Policy period. Policy, § VII.  Under Arkansas law, a "claims made and reported policy" can only be triggered if the claim is made in writing and given to the insurer during the policy period.  *Campbell & Co. v. Utica Mut. Ins. Co.*, 36 Ark.App. 143, 146, 820 S.W.2d 284 (1991).  *See also Continental Cas. Co. v. Jewell, Moser, Fletcher & Holleman*, 2005 WL 1925964, at *2 (E.D.Ark. 2005).  The giving of notice under such a policy containing materially identical language to that used in the Policy at issue in this action is a condition precedent to coverage under the policy.  *AIG Centennial Ins. Co. v. Fraley-Landers*, 450 F.3d 761, 765 (8th Cir. 2006).  *Cf. Kimbrell v. Union Standard Ins. Co.*, 207 F.3d 535, 537 (8th Cir. 2000) (insured's failure to send his insurer papers regarding a lawsuit that had been filed against him violated a condition precedent of the policy). Arkansas law does not require any showing of prejudice to the insurer when the insured fails to give the insurer notice of loss, and the giving of notice was made a condition precedent to coverage.  *Fraley-Landers*, 450 F.3d at 767.

Here, the counterclaim and third-party complaint against Stacks was filed on October 19, 2005, and Stacks first gave written notice to KBS of the claim by letter dated May 17, 2006, within the Policy period of July 1, 2005, to July 1, 2006, but well beyond the 30 days after discovery of the claim.  It would appear at first glance, then, that Stacks failed to provide the required notice of the Mixes' claims.  Stacks, however, argues that KBS waived the written notice requirement.

According to affidavits of Stacks and James Wallace, a regional agent for KBS, Stacks contacted KBS to apprise it of the Mixes' claims before expiration of the 30-day period and KBS

thereupon instructed Stacks on how to proceed.  Specifically, Stacks states he contacted Wallace in October 2005 and told Wallace that he and HomeBank had been sued by the Mixes and that he had to make a claim for coverage against the Policy.  Noting that during his employment with KBS he had on multiple occasions been instructed to advise insureds to contact Don Towle, President of KBS, for instructions on making a claim against a policy, Wallace states he told Stacks in their October 2005 conversation that he needed to call Towle for instruction on how to make a claim against a policy.  Stacks states that after speaking with Wallace, he immediately called Towle and reported the lawsuit.  Stacks states he told Towle of the claim and a confidentiality agreement that must be executed by a person prior to receiving documents in the case, and that Towle told him to simply send him the confidentiality agreement for his signature and to send him the pleadings from the Mixes' case after he had returned the confidentiality agreement.  Stacks states that Towles never told him anything further needed to be done and never told him that written notice of the Mixes' claims must be sent in within 30 days. According to a May 17, 2006, letter to Towle from Stacks' counsel, Towle executed a Non-Disclosure certificate on behalf of KBS on May 15, 2006, after which Stacks provided Towle with the pleadings in the Mixes' case.

Towle states in his affidavit that Stacks "first notified KBS by telephone call on May 2, 2006 followed by letter dated May 17, 2006, of his alleged claim under [the Policy].  In his May 23 and June 12, 2006, letters denying coverage, however, Towle denied coverage on grounds that the acts complained of were not committed by Stacks solely within his capacity as an officer of the bank; Towle never invoked the 30-day notice requirement of the Policy (other than to state, somewhat cryptically, that there are other provisions of the Policy which also apply to this

matter).

Waiver of a policy requirement or estoppel to rely upon it may be based upon conduct of an insurance company or its agents.  *See Continental Ins. Co. v. Stanley*, 263 Ark. 638, 644, 569 S.W.2d 653, 657 (1978).  Given the uncontroverted actions and representations of KBS's agent and the fact that KBS never specifically invoked the notice requirements of the Policy prior to this action, and resolving all doubts in favor of the insured, the Court finds on this record that KBS waived the 30-day notice requirement and is estopped from relying on that policy requirement.

3.

KBS next argues that the Mixes' claims are based upon or attributable to Stacks's gaining in fact a personal profit or advantage to which he was not legally entitled and that no coverage under the Policy is provided for claims "based upon or attributable to the Directors or Officers or Employees gaining in fact any personal profit or advantage to which they were not legally entitled."  While it may be true that Stacks would not be entitled to such coverage, the Court has already determined that the Mixes' counterclaim and third-party complaint contains allegations against Stacks in his capacity as President of HomeBank and the Mixes' banker and that the duty to defend arises when there is a possibility that the injury or damage may fall within the policy coverage.  The Court finds that such a possibility exists and that KBS thus has a duty to provide Stacks a defense against the Mixes' claims.

4.

Finally, KBS argues the Mixes' claims were brought about or contributed to by the dishonesty of Stacks and the Policy excludes from coverage any claim "brought about or contributed to by the dishonesty of the Directors or Officers or Employees."  While it may be true that Stacks would not be entitled to coverage for claims brought about or contributed to by his dishonesty, the Court, as previously noted, has determined that the Mixes' counterclaim and third-party complaint contains allegations against Stacks in his capacity as President of HomeBank and the Mixes' banker and that the duty to defend arises when there is a possibility that the injury or damage may fall within the policy coverage.  Again, the Court finds that such a possibility exists and that KBS thus has a duty to provide Stacks a defense against the Mixes' claims.

5.

In sum, this is not a situation in which the underlying allegations and evidence make clear that the acts complained of were not committed by Stacks solely within his capacity as an officer of the bank and that the Policy exclusions relied upon are applicable.  *See, e.g., Westport Ins. Corp. v. Hanft & Knight, P.C.*, 523 F.Supp.2d 444, 455 (M.D.Pa. 2007) (applying Pennsylvania law).  Rather, resolving all doubts in favor of the insured, the underlying allegations and evidence presented are not sufficient to determine without further underlying proceedings that the acts complained of were not committed by Stacks solely within his capacity as an officer of the bank or support application of the Policy exclusions relied upon.  *Id.* (collecting cases); *see also Madden*, 53 Ark.App. at 255, 922 S.W.2d at 734 (while the insured is entitled to a defense if there is any possibility that the injury may fall within the policy limits

13

based upon the allegations of the complaint however groundless or false those allegations may

be, whether the insurer has a duty to pay depends upon whether coverage actually extends to the

facts established at trial).  Accordingly, KBS has a duty to provide Stacks a defense against the

Mixes' claims.[4]


### III.

For the foregoing reasons, the Court grants Stacks's motion for partial summary

judgment and finds that KBS has a duty to provide Stacks a defense against the Mixes' claims.[5]


IT IS SO ORDERED this 7th day of July 2008.


/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE

---

[4] The Court agrees with KBS, and Stacks does not dispute, that the Mixes' claim for punitive damages are excluded from coverage under the Policy.  Generally, however, an insurer's duty to defend, if triggered as to one claim asserted against the insured, obligates the insurer to provide a defense as to the entire action, even though other claims are clearly outside the scope of coverage.  *Medical Liability Mut. Ins. Co. v. Alan Curtis Enterprises, Inc.*, 2006 WL 3542986, * 12 (E.D.Ark. 2006) (Eisele, J.).  The rationale for the rule is that it assures that the insured will have a coherent, coordinated defense aimed at defeating all of the claims, rather than separate defenses that might work at cross purposes.  *Id.* (internal quotation marks and citation omitted).  Accordingly, this Court agrees with Judge Eisele that the Arkansas Supreme Court would apply this rule and hold that when an action against an insured involves both covered and noncovered claims, the insurer has a duty to defend the entire action.  *Id.*

[5] KBS requests that if there is any doubt that Stacks's motion for partial summary judgment should be denied, then this Court should delay ruling until further discovery is completed which KBS states it expects will likely uncover additional facts showing Stacks was acting in his personal capacity concerning the sale of the Damascus One-Stop.  The Court denies this request given, as previously noted, that it is the allegations made against the insured, regardless of their viability, that determines the duty of the insurer to defend the litigation against the insured.